# SUMMONS - CIVIL

JD-CV-1 Rev. 10-15
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov



See other side for instructions

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
☐ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| 123 Hoyt Street, Stamford 06905 | ( 203 ) 965-5308 | OCTOBER 1, 2019 |

| | At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349) | Case type code (See list on page 2) |
|---|---|---|
| ☒ Judicial District  ☐ G.A. Number: <br> ☐ Housing Session | Stamford | Major: T    Minor: 20 |

For the Plaintiff(s) please enter the appearance of:

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (to be entered by attorney only) |
|---|---|
| Cicchiello & Cicchiello, LLP, 364 Franklin Avenue, Hartford, CT 06114 | 419987 |

| Telephone number (with area code) | Signature of Plaintiff (If self-represented) |
|---|---|
| ( 860 ) 296-3457 | |

The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book.   ☒ Yes   ☐ No

Email address for delivery of papers under Section 10-13 (if agreed to): mparadisi@cicchielloesq.com

Number of Plaintiffs: 2    Number of Defendants: 1    ☐ Form JD-CV-2 attached for additional parties

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; Country, if not USA) | |
|---|---|---|
| First Plaintiff | Name: ROSELLE, PHILLIP <br> Address: 74 BEACON STREET, NORWALK, CT 06851 | P-01 |
| Additional Plaintiff | Name: ROSELLE, DEBBIE <br> Address: 74 BEACON STREET, NORWALK, CT 06851 | P-02 |
| First Defendant | Name: GLOCK, INC. --- 6000 HIGHLANDS PKWY SE, SMYRNA, GA, 30082-7204 <br> Address: AGENT: NATIONAL REGISTERED AGENTS, INC., 67 BURNSIDE AVE, EAST HARTFORD, CT 06108-33408 | D-01 |
| Additional Defendant | Name: <br> Address: | D-02 |
| Additional Defendant | Name: <br> Address: | D-03 |
| Additional Defendant | Name: <br> Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed (Sign and "X" proper box) | ☒ Commissioner of the Superior Court  ☐ Assistant Clerk | Name of Person Signing at Left <br> **Matthew D. Paradisi** | Date signed <br> 08/28/2019 |
|---|---|---|---|

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

| For Court Use Only |
|---|
| File Date |

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date | Docket Number |
|---|---|---|---|

(Page 1 of 2)

| | |
|---|---|
| RETURN DATE:   OCTOBER 1, 2019 : | SUPERIOR COURT |
| PHILLIP ROSELLE and : | J.D. OF STAMFORD |
| DEBBIE ROSELLE : | |
|  : | AT STAMFORD |
| VS. : | |
|  : | |
| GLOCK, INC. : | AUGUST 28, 2019 |

## COMPLAINT

1.  This is an Action for personal injuries sustained on or about September 5, 2017 by Phillip Roselle, a former police officer with the City of Norwalk Police Department, when a defective and unreasonably dangerous Glock 17 9mm handgun was unintentionally discharged by a fellow officer following a training exercise, resulting in Mr. Roselle being shot with a 9mm round in the abdomen and forearm, causing him catastrophic injuries more particularly described hereinafter.

2.  At all times set forth herein, the Plaintiff, Phillip Roselle ("Plaintiff"), was a resident of the City of Norwalk, State of Connecticut.

3.  At all times set forth herein, the Plaintiff, Debbie Roselle ("Mrs. Roselle"), was Plaintiff Phillip Roselle's wife, and was a resident of the City of Norwalk, State of Connecticut.

4.  At all times set forth herein, the Defendant, Glock, Inc. ("Glock"), was a Georgia Corporation that is licensed and conducts business in the State of Connecticut.

5.  At all times set forth herein, the Defendant, Glock was a corporation that designs, manufactures, tests, sells, and distributes guns, including the Glock model 17, 9mm handgun bearing serial number BDGV801 (the "Gun") which is the subject of this Action, under the "Glock" brand name through its related corporate entity and co-defendant herein, "Glock, Inc."

1

6.  This Court has personal jurisdiction over Defendant Glock, Inc. because this Defendant is licensed to do and is doing business in the State of Connecticut, and is subject to this jurisdiction. Defendant Glock, Inc. either directly or through its agents engages in systematic business transactions in the State of Connecticut. Such contacts include, for instance, the design, testing, marketing, supply, warranty, and distribution of firearms in the State of Connecticut.

7.  Glock's website[1] touts "perfection" in its design and manufacture of the handguns it markets, including identical models to the Gun presently the subject of this Action. Glock conveys, for instance, that "No matter which GLOCK pistol you choose, it will deliver on our promise of safety, reliability, and simple operation, all at an affordable price." Glock further markets itself as being engaged in the "continuous pursuit of perfection in every facet of design, engineering, and manufacturing[,]" and conveys to consumers that Glock "will never compromise quality, [and] will continue to invest tremendous resources in the technology and talent necessary to improve [its] products wherever possible." Glock markets its brand to consumers throughout the United States and Connecticut as "a symbol of confidence among law enforcement professionals" and conveys to its clientele and end-users that "GLOCK pistols were engineered to be safe, simple to shoot and maintain, and ready to perform when called upon." Finally, GLOCK assures end users and consumers throughout Connecticut and the United States as follows: "Consumers seeking personal defense can rest assured that GLOCK pistols will fire when the system is engaged, *but will not fire unintentionally.*"

---

[1] https://us.glock.com/en

8.     Upon information and belief, and notwithstanding Glock's unambiguous marketing statements to the contrary, the Gun and substantially similar models manufactured, designed, and marketed by Glock result in thousands of unintentional discharges throughout the United States annually. For instance, in 2011, and only with respect the New York Police Department, 75% of unintentional discharges by NYPD officers involved Glock firearms. In its 2011 Annual Firearms Discharge Report[2], the NYPD observed that Glock has been "overrepresented" in the unintentional discharge category "consistently over the past five years." In that time period, 22 of 31 unintentional discharges involved Glocks with substantially similar designs as the Gun, with experts concluding that this high rate of unintentional discharge "most likely stems from the fact that a person disassembling a Glock must depress the trigger to do so."

9.     The Gun which is the subject of this Action contains at least one defect which rendered it unreasonably dangerous and unfit for its intended use. First, the Gun requires end-users to depress the trigger in order to disassemble and clean it, rendering it prone to unintentional discharge when an end user foreseeably fails to ensure an empty chamber prior to undertaking such disassembly (the "Disassembly Defect"). Secondly, Glock instructs its end users in its "Instructions for Use" that as part of the process to disassemble the Glock 17, the end user can "eject any cartridge that me be in the chamber" by "grasp[ing] the rear of the slide [] at the serrations with your []hand and pull the slide back fully[,]" despite the fact that Glock 17s, such as the Gun, may fail to eject such chambered rounds, giving end users the false impression that when the slide is in its locked-back position, the chamber is empty (the "Ejection Defect").

---

[2]     http://www.nyc.gov/html/nypd/downloads/pdf/analysis_and_planning/nypd_annual_firearms_discharge_report_2011.pdf

10. Despite the fact that Glock knew, or should have known, that its firearm designs including Model 17 such as the Gun were prone to unintentional discharge on account of the Disassembly Defect and the Ejection Defect, Glock has altogether failed to correct such defects or otherwise adequately warn end users of the same, resulting in continued unintentional discharges such as that which resulted in Plaintiff's severe injuries. Glock's failure to address these Defects was further despite the fact that Glock is aware that individuals have been seriously injured and/or killed as a result of the Defects.

11. At all times relevant, Glock had a duty to disclose and warn Plaintiff and other end-users of the Defects, to do so truthfully and fully, without concealment or misrepresentations about the Defects. In derogation of this duty, Glock carelessly and negligently failed to disclose such Defects or to adequately warn end-users of the same.

12. At all times relevant, instead, Glock has fraudulently represented to its end-users and consumers that its firearms, including the Gun, were safe for normal and foreseeable use, when in fact the same was knowingly false.

13. On or about September 5, 2017, Plaintiff, then more than a 20-year veteran police officer with the City of Norwalk Police Department, attended a low-light firearms training seminar being conducted at the Norwalk Police Firing Range, in Norwalk, Connecticut between 12:00pm and 4:00pm.

14. At the time, the Norwalk Police Department had recently made the decision to issue its officers Glock 17 firearms, including the Gun, which was ultimately issued to Sargent Jason Scanlon of the Norwalk Police Department.

15. Sargent Scanlon, upon the conclusion of the pistol portion of the training seminar, observed that the Gun, his department-issued Glock 17, had its slide locked back following the firing of the final round of a magazine, indicating to him, and consistent with Glock's representations in the Gun's "Instructions for Use," that the chamber was empty.

16. Plaintiff, along with Sargent Jason Scanlon, both of whom had finished the training seminar early, left the range and proceeded to the gun cleaning area in order to disassemble their firearms, clean them, and load them with duty ammunition at approximately 2:45pm.

17. Sargent Scanlon, at that time, commenced disassembling his department-issued Glock 17—the Gun—and during the course of disassembly, engaged or depressed the Gun's trigger, as is required by virtue of the Gun's defective design, and in doing so, discharged a chambered round, which ricocheted off a cleaning bench, striking and penetrating into and through Plaintiff's right forearm, and ultimately becoming lodged in Plaintiff's abdomen/chest cavity.

18. The aforesaid unintentional discharge occurred on account of Glock's negligence, the aforesaid Disassembly Defect, the aforesaid Ejection Defect, and/or inadequate warnings associated with the Gun and its use.

19. As a result of the forgoing incident, and Glock's conduct, Plaintiff has sustained severe personal injuries, including, *inter alia*:

    a. Entry and exit wounds in his right forearm;

    b. Bullet entry wound in his right abdomen;

    c. Profuse blood flow and immediate shock to his nervous system;

    d. A bullet permanently lodged in the upper right quadrant of his abdomen between two ribs;

    e. Post-Traumatic Stress Disorder;

    f. Depression;

    g. Anxiety;

    h. Onset of End-Stage Renal Disease and concomitant need for chronic hemodialysis and kidney transplant;

    i. Median neuropathy in the Right (master) arm;

    j. Complex Regional Pain Syndrome in his Right (master) arm;

    k. 49% permanent impairment to his Right (master) arm; and

    l. Other injuries, the nature, extent, and duration of which are not yet fully ascertained.

20. In addition to the aforesaid enumerated injuries, Plaintiff has sustained significant pain, suffering, and mental anguish on account of Glock's conduct.

21. Said injuries, or the effects thereof, are permanent.

22. As a further result of Glock's conduct, Plaintiff was compelled to expend, or others on his behalf were compelled to expend, large sums of money for medical treatment, hospital bills and medicine, all to his loss and damage.

23. As a further result of Glock's conduct, Plaintiff has lost or has been restricted in the ability to enjoy life's pleasures, and has been caused significant pain and suffering, emotional and physical.

24. As a further result of Glock's conduct, Plaintiff has sustained significant lost wages, a severe diminution in his future earning capacity, and a permanent inability to engage in his profession as a police officer.

**COUNT ONE:         NEGLIGENCE**

25. The above paragraphs are hereby repeated and re-alleged in this Count as if fully set out herein.

26. Glock's conduct in designing, manufacturing, testing, marketing, distributing, and selling the Gun proximately caused Plaintiff's injuries, and was negligent in one or more of the following ways:

27. Glock's design process for the gun failed to comprehend, test for, or correct the fact that reasonably foreseeable unintentional discharges on account of the Disassembly Defect and the Ejection Defect rendered the Gun unreasonably safe for end users, though through the exercise of reasonable care, it should have done so, and all despite the fact that it knew or should have known that the Gun was defective;

28. Glock failed to adequately warn its end users of the Disassembly Defect and the Ejection Defect, though through the exercise of reasonable care, it should have done so, and all despite the fact that it knew or should have known that the Gun was defective; and/or

29. Glock failed to reasonably and properly inspect the Gun prior to placing it into the stream of commerce, though through the exercise of reasonable care, it should have done so, and all despite the fact that it knew or should have known that the Gun was defective.

**COUNT TWO:    PRODUCTS LIABILITY IN VIOLATION OF C.G.S. § 52-572M**

30. The above paragraphs are hereby repeated and re-alleged as if if fully set out herein.

31. Glock is liable and legally responsible to the Plaintiff for his injuries by virtue of C.G.S. § 52-572m *et seq.*, in one or more of the following respects:

   a. in that said Gun was in a defective and unreasonably dangerous condition and could not be used without unreasonable risk of injury to the Plaintiff. Said product was expected to and did reach the plaintiff without substantial change in the condition from which it was manufactured and sold;

   b. in that the Glock failed to warn or instruct the Plaintiff or other end-users that the Gun was in an unreasonably dangerous condition by virtue of the Disassembly Defect and the Ejection Defect;

   c. in that Glock designed the Gun with both the Disassembly Defect and the Ejection Defect rendering the Gun inherently dangerous and creating a significant, clear, and unreasonably risk of serious injury or death;

   d. in that Glock manufactured, assembled, advertised, marketed, distributed, and sold the Gun with the aforesaid Defects, and that the Gun was in the same defective condition due to such Defects from the time they left Glock's control until the time of the incident which is the subject of this Action, and all use of the Gun was intended and/or reasonably foreseeable to Glock;

    e. in that Glock represented to the Plaintiff and the general public, by its public marketing representations and by virtue of placing said Gun for retail sail, that the Gun in question was safe for use by the public; and/or

    f. in that the Defendant breached an implied warranty of merchantability in that said Gun was not of merchantable quality and fit for its intended or foreseeable purpose.

32. The Gun was not altered, modified, or misused in any unforeseeable manner between the time it left Glock and the time of Plaintiff's injury.

33. As a direct and proximate result of the facts alleged herein above, Plaintiff was exposed to a clear, significant, and unreasonable risk of serious injury from the Defects set out herein above, and did indeed suffer significant damages, as described more particularly herein above.

**COUNT THREE:   BREACH OF EXPRESS WARRANTY**

34. The above paragraphs are hereby repeated and re-alleged as if if fully set out herein.

35. Glock provided express warranties with the Gun to its owner and end users, which are memorialized in writing and are published to the public at large.

36. Glock breached the express warranties and as a result of such breach, Plaintiff has been damaged.

37. Plaintiff is the express beneficiary of the express warranties and/or Glock has expressly waived privity of contract as a requirement to the enforceability of any of its express warranties.

38. Notwithstanding these express warranties, and in breach of the same, Glock designed the Gun with the aforementioned Disassembly Defect and Ejection Defect, which rendered the Gun in breach of Glocks express warranties, unmerchantable, nonconforming, and unsafe for normal or foreseeable use and created a substantial and unreasonable risk of serious injury or death to Plaintiff, resulting in Plaintiff's significant injuries, more particularly described herein above.

39. Glock's breach of the express warranties is a proximate cause of the Plaintiff's injuries and the warranties have failed in their essential purpose.

**COUNT FOUR:    BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY**

40. The above paragraphs are hereby repeated and re-alleged as if if fully set out herein.

41. At all times mentioned herein, Glock designed, manufactured, marketed, distributed, and sold the Gun with the Defects, and the Glock Defendants impliedly warranted to Plaintiff that the Gun was of quality and fit for the use for which they were intended and for foreseeable use, that the Gun was merchantable, would operate effectively, was safe for normal and foreseeable use, was suitable for the ordinary and usual purposes for which it were intended, and would not create an unreasonable risk of injury to consumers.

42. Plaintiff and end users of the Gun relied upon the skill and judgment of Glock.

43. The gun is unfit for its intended use and is not of merchantable quality, as warranted by Glock, in that it has and had the propensities to fail to perform due to the Disassembly Defect and Ejection Defect.

44. Glock designed and manufactured the Gun with the Defects herein above described. Glock designed, manufactured, marketed, distributed, and placed the Gun into the stream of commerce knowing and expecting that the Gun would be used by consumers, around the general public, and by law enforcement officers in the carrying out of their duties.  By distributing the Gun, Glock impliedly represented to Plaintiff that the Gun was merchantable, would operate effectively, was safe for normal use, was suitable for the ordinary, usual, and foreseeable purposes for which it was intended, and would not create an unreasonable risk of injury to consumers.

45. Glock was on notice of the breach of implied warranties at the time it manufactured and distributed the Gun.

46. Glock knew, or should have known about the Disassembly Defect and the Ejection Defect.

47. Glock failed to provide an adequate remedy and caused its implied warranties to fail of their essential purpose, thereby permitting remedy under the implied warranties to Plaintiff.

48. As a direct and proximate result of the breach of said warranties, Plaintiff has suffered and will continue to suffer significant damages as alleged herein.

**COUNT FIVE:     LOSS OF CONSORTIUM**

49. The above paragraphs are hereby repeated and re-alleged as if if fully set out herein.

50. At all times mentioned herein, Plaintiff Debbie Roselle was and still is the lawful wife of Plaintiff Phillip Roselle.

51. As a result of the conduct of Glock, Mrs. Roselle has been denied the care, consideration, consort, companionship and aid in society of her husband, Plaintiff Phillip Roselle.

PLAINTIFFS,
PHILLIP ROSELLE and
DEBBIE ROSELLE

By: _____
Matthew D. Paradisi
Cicchiello & Cicchiello, LLP
364 Franklin Avenue
Hartford, CT 06114
Tel: (860) 296-3457
Fax: (860) 296-0676
Juris No.: 419987
Email: mparadisi@cicchielloesq.com

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays for the following relief:

1. Money damages;
2. Allowable costs;
3. All other awardable relief the Court deems just and proper.

PLAINTIFFS,
PHILLIP ROSELLE and
DEBBIE ROSELLE

By: _____
Matthew D. Paradisi
Cicchiello & Cicchiello, LLP
364 Franklin Avenue
Hartford, CT 06114
Tel: (860) 296-3457
Fax: (860) 296-0676
Juris No.: 419987
Email: mparadisi@cicchielloesq.com

| | | |
|---|---|---|
| RETURN DATE: OCTOBER 1, 2019 | : | SUPERIOR COURT |
| | : | |
| PHILLIP ROSELLE and | : | J.D. OF STAMFORD |
| DEBBIE ROSELLE | : | |
| | : | AT STAMFORD |
| VS. | : | |
| | : | |
| GLOCK, INC. | : | AUGUST 28, 2019 |

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand exceeds $15,000.00, exclusive of interests and costs.

PLAINTIFFS,
PHILLIP ROSELLE and
DEBBIE ROSELLE

By: _____
Matthew D. Paradisi
Cicchiello & Cicchiello, LLP
364 Franklin Avenue
Hartford, CT 06114
Tel: (860) 296-3457
Fax: (860) 296-0676
Juris No.: 419987
Email: mparadisi@cicchielloesq.com

STATE OF CONNECTICUT:
: ss: EAST HARTFORD    AUGUST 29, 2019
COUNTY OF HARTFORD   :

Then and by virtue hereof, and by direction of the Attorney, I left a verified true and attested copy of the original WRIT, SUMMONS, COMPLAINT, PRAYER FOR RELIEF AND STATEMENT OF AMOUNT IN DEMAND, with and in the hands of GARY SCAPPINI, MANAGER OF NATIONAL REGISTERED AGENTS, INC., 67 BURNSIDE AVE, AGENT FOR SERVICE and duly authorized to accept service for the within named defendant **GLOCK, INC.,** in the said town of EAST HARTFORD, County of Hartford.

The within is the original WRIT, SUMMONS, COMPLAINT, PRAYER FOR RELIEF AND STATEMENT OF AMOUNT IN DEMAND, with my doings thereon endorsed.

| | |
|---|---|
| Verified pages | $16.00 |
| Endorsements | 1.60 |
| Service | 40.00 |
| Travel | .58 |
| Total | $58.58 |

ATTEST:

KEITH NIZIANKIEWICZ
CT STATE MARSHAL
HARTFORD COUNTY

**KEITH D. NIZIANKIEWICZ**
*Connecticut State Marshal*
P.O. BOX 280867 • EAST HARTFORD, CONNECTICUT 06128-0867 • OFFICE: (860) 610-0295